IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ELIZABETH A. KANE, BANKRUPTCY TRUSTEE; AIR LINE PILOTS ASSOCIATION, INTERNATIONAL; HAWAII TEAMSTERS AND ALLIED WORKERS, LOCAL 996,<br><br>Plaintiffs,<br><br>vs.<br><br>PACAP AVIATION FINANCE, LLC; PACIFICCAP INVESTMENT MANAGEMENT, LLC; MALAMA INVESTMENTS, LLC; SNOWBIZ VENTURES, LLC; PACAP MANAGEMENT SOLUTIONS, LLC; PACAP ADVISORS, LLC; JEFFREY AU; JACK TSUI; JACK CHUCK SHE TSUI TRUST; LAWRENCE INVESTMENTS, LLC; LAWRENCE J. ELLISON REVOCABLE TRUST; OHANA AIRLINE HOLDINGS, LLC; CARBONVIEW LIMITED, LLC; PAUL MARINELLI; LAWRENCE J. ELLISON; CATHERINE YANNONE; CHRISTOPHER GOSSERT,<br><br>Defendants. | CIV. NO. 19-00574 JAO-RT<br>CIV. NO. 20-00246 JAO-RT[1]<br><br><br><br>ORDER REGARDING EQUITABLE CLAIMS AND THE USE OF AN ADVISORY JURY |

---

[1]  Case No. 20-00246 JAO-RT was consolidated with Case No. 19-00574 JAO-RT on April 7, 2021.  The latter case is the lead case, and the Court cites only to the docket items from that case in this Order.  *See* ECF Nos. 16 & 17.

## ORDER REGARDING EQUITABLE CLAIMS AND THE USE OF AN ADVISORY JURY

Before the Court are a Joint Status Report, *see* ECF No. 175, briefs, *see* ECF Nos. 179 & 180, and memorandum of law, *see* ECF No. 185, in response to the Court's July 6, 2023 order to confer regarding equitable claims and whether to have a jury provide advisory findings as to the equitable claims.  ECF No. 168. The parties agree that in Case No. 19-00574 JAO-RT ("90027 Action"), Counts 1– 2, 4–11 are to be tried by jury and that Counts 12 and 13 are equitable and so should be tried by the Court.  ECF No. 175.  They disagree as to whether the Count 3 claim under the Worker Adjustment and Retraining Notification Act of 1988 ("WARN Act"), 29 U.S.C.  §§ 2101–2109, and the piercing-the-corporate-veil ("PCV") allegations in the Complaint are to be tried by a jury or by the Court. ECF No. 175.  There is no disagreement as to equitable issues in Case No. 20-00246 JAO-RT ("90049 Action"):  the parties agree that the Court should try Counts 1–2, and Counts 3–75 are to be tried by jury, except for the claims against PaCap Aviation Finance, LLC ("PaCap") and Carbonview Limited, LLC ("Carbonview"), which are to be tried by the Court.  ECF No. 175.

Plaintiffs Elizabeth A. Kane, the Chapter 7 trustee ("Trustee") in the underlying bankruptcy case commenced by Debtor Hawaii Island Air, Inc. ("Island Air" or the "Debtor"); Air Line Pilots Association, International; and Hawaii Teamsters and Allied Workers, Local 996 (collectively with the Trustee,

"Plaintiffs") argue that the Count 3 WARN Act claim and the PCV allegations are legal issues for which the Seventh Amendment entitles them to a jury trial.  ECF No. 180.

Defendants Ohana Airline Holdings, LLC; Lawrence J. Ellison; the Lawrence J. Ellison Revocable Trust; Lawrence Investments, LLC; Carbonview Limited, LLC; and Paul Marinelli (collectively, the "Ohana Defendants") and Defendants PaCap Aviation Finance, LLC; PaCap Management Holdings, LLC; PacifiCap Investment Management, LLC; Malama Investments, LLC; SnowBiz Ventures, LLC; PaCap Management Solutions, LLC; PaCap Advisors, LLC; PacifiCap Management, Inc.; Jeffrey Au; Jack Cheuk She Tsui Revocable Living Trust; and Jack Tsui (collectively, the "Malama Defendants," and with the Ohana Defendants, "Defendants") argue that the Count 3 WARN Act claim and the PCV allegations are equitable issues for which no jury right exists.  ECF Nos. 179 & 180.  Both Plaintiffs and Defendants prefer not to submit any equitable claims to an advisory jury.  ECF No. 175.

For the following reasons, the Court concludes that the Count 3 WARN Act claim and the PCV allegations are equitable issues for which no jury right exists. But the Court advises both Plaintiffs and Defendants that it is inclined to exercise its discretion pursuant to Federal Rule of Civil Procedure 39(c)(1) to try the Count 3 WARN Act claim, the PCV allegations, and the equitable subordination claim to

an advisory jury.  The Court otherwise accepts the characterization of the

remaining claims as laid out in the Joint Status Report.  ECF No. 175.

## I.      BACKGROUND

### A.      Facts

This is a complex case involving multiple parties and claims, for which the

Complaint runs over 100 pages, and which commenced in Bankruptcy Court

nearly four years ago.  ECF No. 1-2.  Because Plaintiffs, Defendants, and the Court

are familiar with the underlying facts and allegations, the Court provides only a

brief and simplified background relevant to this order.

The dispute stems from the shutdown and bankruptcy of the now-defunct

Island Air, a Delaware corporation.  *See id.*  The Trustee and other Plaintiffs allege

that "the self-interested acts of [Island Air's] owners" resulted in Island Air's

bankruptcy and that had the owners properly exercised their fiduciary duties to

Island Air, the bankruptcy "would not have occurred when it did (if it occurred at

all), the outstanding debts would not have been as substantial as they are, and there

would be additional assets to satisfy those debts."  *Id*. at 9.  In short, the Trustee

claims that Defendants violated their fiduciary duties to Island Air by keeping it on

life support for personal or other improper motives—thereby depleting its assets—

rather than shutting it down in accordance with applicable laws.  *See id.* at 9–12;

*see also id.* at 88–103 (detailing the Trustee's breach of fiduciary duty claims).

4

Island Air filed for Chapter 11 bankruptcy on October 16, 2017 and ceased operations on November 10, 2017.  *See id.* at 75–76.  It was only on November 9, 2017 that Island Air's employees were told that the following day would be the company's last.  *See id.* at 78.  From this, Plaintiffs asserted violations of the WARN Act, 29 U.S.C. § 2101, *see id.* at 81–94, and alleged that the corporate veil should be pierced to remedy that and a number of other causes of action, *see id.* at 79–100 (advocating for piercing the corporate veil in Counts 1–10 of the Complaint).  Plaintiffs also sought to equitably subordinate PaCap Aviation's and Carbonview's claims, *see id.* at 101–02, or alternatively to recharacterize many of the Ohana Defendants' and Malama Defendants' claims as unsecured equity contributions, *see id.* at 103–04.

**B.    Procedural History**

On July 6, 2023, the Court ordered the "[p]arties to meet and confer regarding equitable claims, and whether to have the jury provide advisory findings as to the equitable claims."  ECF No. 168.  The Court ordered the parties to file a Joint Status Report outlining any disagreement by July 24, 2023, ECF No. 168, which was filed on that date.  ECF No. 175.  The Court also ordered the parties to file simultaneous briefing regarding any such disagreement by July 31, 2023, *see* ECF No. 168, which Plaintiffs, the Ohana Defendants and Malama Defendants

timely filed.  *See* ECF Nos. 179 (Ohana Defendants' Brief), 180 (Plaintiffs' Brief),

185 (Malama Defendants' Memorandum of Law).

## II.   LEGAL STANDARDS

### A.   Equitable and Legal Claims

The Seventh Amendment provides, "In Suits at common law . . . the right of

trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-

examined in any Court of the United States, than according to the rules of the

common law."  U.S. Const. amend. VII.  That Seventh Amendment right

encompasses "enforcing statutory rights, and requires a jury trial upon demand, if

the [relevant] statute creates legal rights and remedies, enforceable in an action for

damages in the ordinary courts of law"—in other words, claims that sound in

contract or tort.  *Curtis v. Loether*, 415 U.S. 189, 194, 195 (1974).

To determine whether the statute does so, the Supreme Court has established

a two-part test.  "First, [the court] compare[s] the statutory action to 18th-century

actions brought in the courts of England prior to the merger of the courts of law

and equity."  *Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*, 494 U.S.

558, 565 (1990) (quotations omitted).  Second, and more important, "[the court]

examine[s] the remedy sought and determine[s] whether it is legal or equitable in

nature."  *Id*. (quotations omitted).  Thus, the Seventh Amendment "secures the

right to a jury trial for 'suits in which *legal* rights [are] to be ascertained and

6

determined, in contradistinction to those where equitable rights alone [are] recognized, and equitable remedies [are] administered.'" *Teutscher v. Woodson*, 835 F.3d 936, 943 (9th Cir. 2016) (alterations in original) (quoting *Terry*, 494 U.S. at 564).

Courts may try cases with legal and equitable issues together, but "in cases in which legal and equitable claims turn on common issues of fact, any legal issues for which a trial by jury [is appropriate] must be submitted to a jury, and the jury's determination of the legal claims must occur prior to any final court determination of the equitable claims." *Teutscher*, 835 F.3d at 944 (internal quotations omitted). And "[b]ecause the Seventh Amendment's second clause 'prohibit[s] . . . the courts of the United States to re-examine any facts tried by a jury' except as permitted under the narrow ['rules of the] common law,' the court then must abide by the jury's findings of fact in making any subsequent rulings." *Id.* (internal citations omitted). Therefore, "it follows that 'in a case where legal claims are tried by a jury and equitable claims are tried by a judge, and those claims are based on the same facts,' the trial judge must 'follow the jury's implicit or explicit factual determinations' 'in deciding the equitable claims.'" *Id.* (quoting *Los Angeles Police Protective League v. Gates*, 995 F.2d 1469, 1473 (9th Cir. 1993)). In this way, the trial judge avoids impairing the jury right for legal claims when adjudicating the equitable claims in cases with intertwined factual underpinnings.

Here, the Court must apply this framework to the disagreement over the Count 3 WARN Act claim, the PCV allegations, and (as discussed below) the equitable subordination claim.

### B.    Use of Advisory Issues for Equitable Claims

As explained above, the jury's implicit and explicit factual findings in deciding the *legal* issues must (to the extent they overlap) be accepted as the factual findings in deciding the *equitable* issues.  *Gates*, 995 F.2d at 1473.  Courts may, for any reason, *sua sponte* decide to try any issue "not triable of right by a jury" with an advisory jury.  *See* Fed. R. Civ. P. 39(c)(1).  Considerations of efficiency and judicial economy may influence whether to employ an advisory jury.  *See Alibang v. Tesoro Haw. Corp.*, 2009 WL 10677140, at *1 (D. Haw. Nov. 24, 2009) ("The efficient presentation of evidence and resolution of any intertwined factual issues counsel in favor of presenting the entire matter to the jury."); *Smith v. Reinke*, 2014 WL 2203896, at *1 (D. Idaho May 27, 2014) (if a party "ha[s] a jury trial right on any of his [other] claims," judicial economy is not harmed by using an advisory jury.).

Advisory juries are also useful to "allow[] the judge to get some appreciation for the common sense or standard of the community[.]"  9 Wright & Miller, Federal Practice and Procedure: Civil 3d § 2335. (4th ed.) (collecting cases).  And it is not unusual to use an advisory jury in the bankruptcy context.  *See, e.g.*, *In re*

*Farmers Grain, LLC*, 2019 WL 5699073, at *2 (D. Idaho Nov. 4, 2019); *In re Marciano*, 446 B.R. 407 (Bankr. C.D. Cal. 2010).

When submitting claims to an advisory jury, the court ultimately decides both the findings of fact not otherwise committed to the jury and the conclusions of law. Thus, "review on appeal is of the findings of the court as if there had been no verdict from an advisory jury, and there can be no review of supposed errors relating to rulings before and instructions to the advisory jury." *Ashland v. Ling-Temco-Vought, Inc.*, 711 F.2d 1431, 1438 (9th Cir. 1983) (internal quotation and citations omitted).

## III.  DISCUSSION

### A.  The Count 3 WARN Act Claim

Plaintiffs and Defendants dispute whether the Count 3 failure-to-provide-notice claim under the WARN Act is legal or equitable in nature. ECF No. 175. While there is no controlling authority, the Court concludes that this WARN Act claim is equitable and not triable as of right by a jury.

All courts agree that there is no 18th-century English analogue to the WARN Act. *See, e.g.*, *Bledsoe v. Emery Worldwide Airlines, Inc.*, 635 F.3d 836, 841 (6th Cir. 2011) ("It is undisputed that no action for failing to give advance notice of an employment loss was known to 18th-century England."); *Carlberg v.*

*Guam Indus. Servs.*, 2017 WL 4381667 *7 (D. Guam Sept. 30, 2017) ("[N]o WARN Act analogue was known to 18th-century England.").

The basic question, therefore, is whether the backpay and benefits employers are required to provide for violations of the WARN Act, *see* 29 U.S.C. § 2104(a)(1), are legal "damages . . . [which] sound[] basically in tort," or contract, or if they are instead "an integral part of an equitable remedy, a form of restitution." *Curtis*, 415 U.S. at 195, 197.

Only one circuit court has considered this question, and it concluded that WARN Act remedies are equitable and do not embrace a right to trial by jury. *Bledsoe*, 635 F.3d at 841. Every district court since *Bledsoe* (with one notable exception discussed below) has agreed. *See Fleming v. Bayou Steel BD Holdings II LLC*, 580 F. Supp. 3d 349, 353 (E.D. La. 2022) (collecting cases).

Only two cases within the Ninth Circuit have addressed this question. The most recent was *Alcantara v. United Furniture Industries, Inc*, which—citing *Bledsoe*—explained in a footnote that while "[n]o party has demanded a jury, . . . a jury trial appears unavailable for Plaintiffs' WARN Act claim." 2023 WL 3407154, at *3 n.4 (C.D. Cal. Apr. 21, 2023).

More relevant since Plaintiffs here demand a jury trial, the district court in *Carlberg* squarely analyzed the question and reached the opposite conclusion as *Bledsoe* and its progeny—but *Carlberg* stands alone. While such clear support for

the *Bledsoe* approach counsels against *Carlberg*'s reasoning, *Carlberg* purports to base its conclusions on Ninth Circuit WARN Act precedent, so the Court considers the persuasive weight of its analysis.

The *Bledsoe* court held that the WARN Act's remedies were restitutionary and equitable in nature, and thus not appropriate for jury determination, since they more closely resemble "a breach of an employer's fiduciary duty" than a purely legal cause of action. *Bledsoe*, 635 F.3d at 842. *Bledsoe* relied on (1) the WARN Act's grant of extensive discretion over any damages to the court; (2) the restitutionary nature of the damages; and (3) the lack of explicit textual provision for separate monetary damages that exists in in analogous statutes.

First, the *Bledsoe* court pointed to the WARN Act's plain language:

> "If an employer which has violated this chapter *proves to the satisfaction of the court* that the act or omission that violated this chapter was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of this chapter *the court may, in its discretion, reduce the amount of the liability or penalty provided for in this section*."

*Id.* at 842–43 (quoting 29 U.S.C. § 2104(a)(4)).  Analogizing the statute to Title VII of the Civil Rights Act, the court explained that the similarly broad discretion in that context makes "the award of back pay [] a matter within the court's equitable discretion[.]"  *Id.* at 844 (citations omitted).  Especially persuasive is the *Bledsoe* court's reliance on the distinction between mandatory and discretionary damages drawn by then-Justice Rehnquist in *Albemarle Paper Co. v. Moody*.

There, he explained that "[t]o the extent . . . that the District Court retains substantial discretion as to whether or not to award backpay notwithstanding a finding of unlawful discrimination, the nature of the jurisdiction which the court exercises is equitable, and under our cases neither party may demand a jury trial." 422 U.S. 405, 443 (Rehnquist, J., concurring) (Title VII context). *Carlberg* does not rebut this argument.

The *Bledsoe* court also noted that "[t]he WARN Act expressly provides that the specified remedies are exclusive, adding that the *court shall not have authority to enjoin* a plant closing or mass layoff." 635 F.3d at 843 (emphasis added) (citing 29 U.S.C. § 2104(b)). The court reasoned that this specific prohibition against injunctions was necessary to cabin the equitable power granted to courts by the WARN Act. *See id.* The *Carlberg* court, however, read that provision as an indication that the WARN Act's remedies were not "entirely equitable." 2017 WL 4381667, at *7–8 (citations and quotations omitted). This Court is more persuaded by the *Bledsoe* interpretation, as it seems logical that Congress would insert an express limit on equitable powers that otherwise exist in full rather than use that limit to implicitly indicate that the Act's remedies were actually legal in nature.

Second, the *Bledsoe* court construed the WARN Act's remedies as "restitutionary in nature, and [] not compensation for discriminatory or otherwise wrongful termination or layoff" because "no additional or alternative damages are

provided for, and liability is limited to the number of days of violation and offset by other payments to or on behalf of the employee." 635 F.3d at 843.  The courts that follow *Bledsoe*'s reasoning stress that the WARN Act's remedies ensure that no party gains or suffers more than they would have if the WARN Act had been followed—the remedies simply "restore the *status quo,* a trademark indicium of equitable relief."  *Nelson v. Formed Fiber Techs., LLC*, 2012 WL 118490, at *5 (D. Me. Jan. 13, 2012) (citing *Braunstein v. McCabe*, 571 F.3d 108, 122 (1st Cir. 2009)); *see also e.g.*, *Fleming*, 580 F. Supp. 3d at 354; *PIerluca v. Quality Res., Inc.*, 2017 WL 1409825, at *2 (M.D. Fla. Apr. 20, 2017); *Gregory v. EBF & Assocs., L.P.*, 2011 WL 13201854, at *5 (D. Minn. Apr. 7, 2011).  On a WARN Act claim, an employee cannot, for example, recover costs incurred while she seeks new employment after the failure to warn and corporate shutdown (e.g., she had to take out loans or incur credit card debt to survive month-to-month before finding new employment).  Such damages would be compensatory and contrast with what seems to be purely restitutionary damages prescribed by the WARN Act: backpay and unpaid benefits.  *Cf. Loc. Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1159 (9th Cir. 2001) ("[D]amages under the Act should compensate employees for the money they would have earned but for the premature closure in violation of the WARN Act.").

In contrast, *Carlberg* cited Ninth Circuit precedent that describes the WARN Act's remedial scheme as "'a make-whole compensatory remedy,' [] not[ing that] the Act has various 'punitive' qualities, and [] explain[ing] that 'damages under the Act should compensate employees for the money they would have earned but for the premature closure in violation of the WARN Act.'" *Carlberg*, 2017 WL 4381667, at *7 (quoting *Las Vegas Sands, Inc.*, 244 F.3d at 1159). *Carlberg* explained that "[c]ompensatory damages are, of course, a classic legal remedy, suggesting the *Las Vegas Sands* court may well have understood the WARN Act remedy as legal." *Id.*  It rejected the *Bledsoe* characterization of the damages as restitutionary, observing (1) that the WARN Act differed from statutes that specifically characterized backpay as equitable and (2) that, in its view, the Act's damages provisions were designed to "remedy the loss of th[e] opportunity" to search for new employment that the Act's notice provisions were designed to provide. *Id.* at *7–8 (citations omitted).

But in this Court's view, *Carlberg* overemphasizes the teachings of *Las Vegas Sands*.  That case was focused on deciding whether the tips and holiday pay employees would have received came within scope of the WARN Act's "back pay" requirement and whether employers' non-voluntary payments to affected employees reduced the employers' WARN Act liability. *Las Vegas Sands*, 244 F.3d at 1156.  *Las Vegas Sands* does not purport to consider whether the WARN

14

Act provides a Seventh Amendment right to trial by jury. And despite characterizing the WARN Act as "compensatory," *Las Vegas Sands* described the back-pay remedy as "'traditionally [] understood to mean a sum equal to what [workers] normally *would have earned* had the violation not occurred'"—in other words, a restitutionary measure. *Id.* at 1157 (emphasis added) (quoting *Burns v. Stone Forest Indus. Inc.,* 147 F.3d 1182, 1185 (9th Cir. 1998)).

Finally, the *Bledsoe* court rejected comparisons between the WARN Act and statutes like the Family Medical Leave Act (FMLA), which the court noted "provides separately for 'damages' . . . and for 'such equitable relief as may be appropriate,'" and which was "modeled . . . on the Fair Labor Standards Act (FLSA)—a statute that had been uniformly interpreted to provide a right to jury trial." *Bledsoe*, 635 F.3d at 844–45 (citations omitted). The court concluded that "[n]either is the case with respect to the WARN Act." *Id.* at 845. Unlike the FMLA, the WARN Act's enforcement provisions only make employers liable for "back pay for each day of violation" and "benefits . . . which would have been covered under an employee benefit plan if the employment loss had not occurred." 29 U.S.C. § 2104(a)(1). There is no discussion of equitable relief, except, as noted above, to prohibit courts from "enjoin[ing] a plant closing or mass layoff." *Id.* at 2104(b).

Conversely, *Carlberg* read the combination of the "absence of any WARN Act reference to equity," the specific prohibition on injunctions, and isolated legislative history suggesting that the Act "includes the right to a jury trial" as indications that the WARN Act's remedies were not clearly equitable. *Carlberg*, 2017 WL 4381667, at *7–8 (citations and quotations omitted). This Court is not persuaded by that analysis.

The most persuasive argument in favor of the *Carlberg* approach is the "great majority" (but not unanimity) of out-of-circuit cases that have examined the WARN Act "for purposes of finding an appropriate statute of limitations" and "have shared the understanding that claims arising under the Act most closely resemble claims arising under the laws of contract and tort—actions clearly historically legal in character and clearly offering a jury trial." *Id.* at *8 (citing *United Paperworkers Int'l Union & Its Local 340 v. Specialty Paperboard, Inc.*, 999 F.2d 51, 57 (2d Cir. 1993); *Staudt v. Glastron, Inc.*, 92 F.3d 312, 316 (5th Cir. 1996); *Aaron v. Brown Grp., Inc.*, 80 F.3d 1220, 1226 (8th Cir. 1996); *Frymire v. Ampex Corp.*, 61 F.3d 757, 764 (10th Cir. 1995)). *Carlberg* argued that "consistency and conceptual clarity suggest the better course is to stick with the settled understanding" those cases establish. *Id.*

But those cases analyzed whether the WARN Act was more similar to federal labor law—in which case a federal statute of limitations would apply—or

16

the most analogous state law's statute of limitations.  *See, e.g.*, *N. Star Steel Co. v. Thomas*, 515 U.S. 29, 33–35 (1995) (explaining how to determine a statute of limitations when a statute is silent on that subject).  *Carlberg* is correct that those courts found the closest state analogues to be based in contract or tort.  But even those cases recognize that there are not "any state substantive claim[s] perfectly analogous to [the] WARN [Act.]"  *United Paperworkers*, 999 F.2d at 57; *see also Staudt*, 92 F.3d at 316 ("A WARN action is not particularly analogous to either [state statute].").  And in any event, that is not the question presented here— namely, whether the WARN Act's *remedy* is legal or equitable in nature.  Even the cases *Carlberg* cites recognize that the WARN Act's remedies "do[] not compensate for past services," because they are restitutionary.  *United Paperworkers*, 999 F.2d at 55; *see also Aaron*, 80 F.3d at 1225.  This Court is therefore unpersuaded by *Carlberg*'s citations to the cases considering the WARN Act in the statute-of-limitations context.

*Carlberg* also cited several cases to demonstrate that courts have historically "permitted jury trials for WARN Act claims without any need for examination of whether the jury trial right was actually afforded."  *Carlberg*, 2017 WL 4381667, at *8. (citing *Local Union No. 1992 of the Int'l Brotherhood of Elec. Workers v. The Okonite Co.*, 358 F3d 278 (3d Cir. 2004); *Hollowell v. Orleans Reg'l Hosp. LLC*, 217 F3d 379 (5th Cir. 2000); *Serv. Emps. Int'l Union Local 6 v. Andrews*

*Int'l, Inc.*, 2013 WL 12107630, at *7 (W.D. Wash. July 25, 2013); *McCaffrey v. Brobeck, Phleger & Harrison, L.L.P.*, 2004 WL 345231, at *3 (N.D. Cal. Feb. 17, 2004)). But "unstated assumptions on non-litigated issues," especially in out-of-circuit cases, "are not precedential holdings binding future decisions." *Sakamoto v. Duty Free Shoppers, Ltd.*, 764 F.2d 1285, 1288 (9th Cir. 1985). And the two pre-*Bledsoe* district court cases *Carlberg* cited that squarely disagree with *Bledsoe*'s Seventh Amendment conclusion are (1) not binding; (2) did not analyze the question as thoroughly as *Bledsoe*; and (3) are not the unanimous conclusion of pre-*Bledsoe* district courts, *see, e.g.*, *Loehrer v. McDonnell Douglas Corp.*, 1992 U.S. Dist. LEXIS 22555 (E.D. Mo. Oct. 5, 1992) (denying a jury trial for a WARN Act claim). *See Carlberg*, 2017 WL 4381667, at *8 (citing *Bentley v. Arlee Home Fashions, Inc.*, 861 F. Supp. 65 (E.D. Ark. 1994) and *United Steelworkers of Am., AFL-CIO-CLC v. Dietrich Indus., Inc.*, 1994 WL 661193 (N.D. Ala. June 29, 1994) (both holding that the Seventh Amendment grants a jury right for WARN Act claims)). Indeed, *Carlberg* cites the Eighth Circuit opinion affirming *Loehrer* repeatedly for unrelated propositions, but this Court observes that the Eight Circuit affirmed the *bench* trial the district court conducted in that case after denying a right to a jury trial. *Id.* at *5–6 (citing *Loehrer v. McDonnell Douglas Corp.,* 98 F.3d 1056 (8th Cir. 1996)).

Therefore, this Court will follow the overwhelming weight of caselaw that characterizes the WARN Act and its remedial provisions as restitutionary and thus equitable in nature.  It is convinced by the *Bledsoe* court's approach, especially the emphasis on the complete discretion given to courts to *"*reduce the amount of the liability or penalty provided for in" the WARN Act, *see* 29 U.S.C. § 2104(a)(4). Significantly, *Carlberg* does not grapple at all with that unfettered discretion.

###    B.    The PCV Allegations

The Court concludes that the PCV allegations in the Complaint are equitable issues not triable by right to a jury.

Piercing the corporate veil is an "equitable doctrine."  *In re: Roth Mgmt. Corp.*, 670 F. App'x 597, 598 n.1 (9th Cir. 2016) (unpublished) (under California law).  "Federal *courts* 'apply the law of the forum state to determine whether a corporation is an alter ego of an individual.'"  *In re Packaged Seafood Prod. Antitrust Litig.*, 338 F. Supp. 3d 1118, 1143 (S.D. Cal. 2018) (emphasis added) (quoting *S.E.C. v. Hickey*, 322 F.3d 1123, 1128 (9th Cir. 2003).  In Hawai'i, "*courts* may 'look past a corporation's formal existence' to hold another corporation liable when the 'corporation is the mere instrumentality or business conduit of another corporation or person.'"  *Jass v. CherryRoad Techs., Inc.*, 449 F. Supp. 3d 923, 940 (D. Haw.  2020) (emphasis added) (quoting *Robert's Haw.*

*Sch. Bus, Inc. v. Laupahoehoe Transp. Co.*, 91 Hawaiʻi 224, 240–41, 982 P.2d 853, 869–70 (1999)).

It appears to be a basic assumption of courts analyzing whether to pierce the corporate veil under Hawaiʻi law that this is a determination for the court to make.[2] *See, e.g.*, *Chung v. Animal Clinic, Inc.*, 63 Haw. 642, 647 (1981).

Plaintiffs' argument that the jury must decide whether to pierce the veil based on the legal damages they seek and the fact-bound nature of their claims is unpersuasive. *See* ECF No. 179. Piercing the corporate veil is *itself* a remedy, not a cause of action, so it is irrelevant whether piercing the corporate veil leads to *other* remedies that are legal. *Robert's*, 91 Hawaiʻi at 241, 982 P.2d at 870 (a claim to pierce the corporate veil is "not in itself a claim for substantive relief, but rather to disregard the corporation as a distinct defendant is procedural," which makes piercing the veil a "remedial" doctrine (quotations omitted)). Moreover, as explained above, courts are able and permitted to try legal and equitable issues

---

[2] According to the Complaint, *see* ECF No. 1, Defendants here are incorporated and reside variously in Hawaiʻi, Delaware, and California. If those states' laws were to apply somehow, the result is the same. *See Sonne v. Sacks*, 314 A.2d 194, 197 (Del. 1973) ("piercing the corporate veil may be done only in the Court of Chancery," an equitable court); *Postal Instant Press, Inc. v. Kaswa Corp.*, 162 Cal. App. 4th 1510, 1522 (2008) ("Traditional piercing of the corporate veil is *justified as an equitable remedy* when the shareholders have abused the corporate form to evade individual liability, circumvent a statute, or accomplish a wrongful purpose." (emphasis added) (citing 9 Witkin, Summary of Cal. Law (10th ed. 2005) Corporations, §§ 9, 11–12)).

with shared factual underpinnings in the same action, so long as the jury's findings of the shared facts in the legal issues are respected by the court when it decides the equitable issues.  *See, e.g.*, *Teutscher*, 835 F.3d at 944.

###    C.    Use of an Advisory Jury

In this case, the parties "prefer not to submit any equitable claims to the jury for advisory findings and request that the Court not do so."  ECF No. 175.  As explained above, however, the Court may exercise its discretion as it sees fit to try an issue to an advisory jury to make advisory findings and advisory conclusions on the equitable claims.  Fed. R. Civ. P. 39(c)(1).  Here, many of Plaintiffs' legal claims involve the alleged misconduct of Defendants and those who allegedly controlled the Defendant entities—factual findings for the trier of fact to determine.  Because the jury will already consider Defendants' conduct as to the legal claims, it seems efficient to have them consider (in an advisory capacity) Defendants' conduct for at least some of the equitable claims too.  For this reason, especially as to the Count 3 WARN Act claim and the PCV allegations the Court is inclined to use an advisory jury.

The Court agrees with the Joint Status Report, *see* ECF No. 175, that Count 12 of the 90027 Action—equitable subordination, *see* ECF No. 1—is an equitable issue for the Court to decide.  *See In re First All.  Mortg. Co.*, 471 F.3d 977, 1006 (9th Cir. 2006).  Nonetheless, the Court now advises that it is also inclined to ask

the jury to make advisory findings on the equitable subordination questions of whether Defendants' conduct was "inequitable," whether "misconduct" injured creditors, or whether an "unfair advantage" was obtained. *See id* (explaining the three findings a court must make to equitably subordinate a claim: "(1) that the claimant engaged in some type of inequitable conduct, (2) that the misconduct injured creditors or conferred unfair advantage on the claimant, and (3) that subordination would not be inconsistent with the Bankruptcy Code").

The Court will issue a final decision on whether to try equitable subordination, the Count 3 WARN Act claim, and the PCV allegations to the jury in an advisory capacity after considering the proposed jury instructions. The Court is not suggesting it has already made its decision on this issue. Rather, the Court is advising the parties that this is a possibility, which may help them prepare for trial.

The parties were previously instructed to submit proposed jury instructions to the Court by September 5, 2023. ECF No. 145. The Court now instructs the parties to include in those submissions their proposed jury instructions for advisory jury verdicts regarding the Count 3 WARN Act claim, the PCV allegations, and the Count 12 equitable subordination claim. The Court's previous instructions and scheduling regarding jury instructions continue to apply. *See* ECF No. 145.

After reviewing the proposed jury instructions, the Court will inform the parties whether all or any of those equitable claims will be tried to the jury acting

22

in an advisory capacity, with the Court subsequently making its own independent findings of fact and conclusions of law on the equitable claims.

## IV.   CONCLUSION

For the foregoing reasons, the Court concludes:

(1)   the Count 3 WARN Act claim is an equitable claim and so the Court will decide this claim;

(2)   the PCV allegations are equitable remedies and so the Court will decide them;

(3)   the Court accepts the Joint Status Report's characterizations of the remaining claims as either equitable or legal, *see* ECF No. 175;

(4)   the use of an advisory jury pursuant to Rule 39(c)(1) may be appropriate regarding the Count 3 WARN Act claim, the PCV allegations, and the Count 12 equitable subordination claim.  The parties are directed to submit proposed jury instructions accordingly by September 5, 2023.

///

///

///

///

///

23

IT IS SO ORDERED.

DATED: Honolulu, Hawaiʻi, August 25, 2023.

Jill A. Otake
United States District Judge

CIV. NO. 19-00574 JAO-RT, *Kane v. PaCap Aviation Fin., LLC*; CIV. NO. 20-00246 JAO-RT, *In re Hawaii Island Air, Inc.*; Order Regarding Equitable Claims and the Use of an Advisory Jury

24