**TSUGAWA LAU & MUZZI LLLC**
CHRISTOPHER J. MUZZI       6939
55 Merchant Street, Suite 3000
Honolulu, Hawaii 96813
Telephone: (808) 531-0490
Facsimile: (808) 534-0202
Email:  cmuzzi@hilaw.us

**MORRISON & FOERSTER LLP**
LORENZO MARINUZZI (Admitted *Pro Hac Vice*)
DARRYL P. RAINS (Admitted *Pro Hac Vice*)
JAMES R. HANCOCK (Admitted *Pro Hac Vice*)
250 West 55th Street
New York, NY 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Email:  LMarinuzzi@mofo.com
Email:  DRains@mofo.com
Email:  JHancock@mofo.com

**PILLSBURY WINTHROP SHAW PITTMAN LLP**
RAHMAN CONNELLY (Admitted *Pro Hac Vice*)
31 West 52nd Street
New York, NY 10019-6131
Telephone: (212) 858-1237
Email:  Rahman.Connelly@pillsburylaw.com

Attorneys for the Ellison Defendants

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII**

| | |
|---|---|
| ELIZABETH A. KANE, Bankruptcy Trustee; et al.,<br><br>Plaintiffs,<br><br>v. | CIV. NO. 19-00574 JAO-RT |

sf-5652937

| | |
|---|---|
| PACAP AVIATION FINANCE, LLC; et al.,<br><br>Defendants. | Trial Date:  September 25, 2023 |
| In re<br><br>HAWAII ISLAND AIR, INC., Debtor. | CIV. NO. 20-00246 JAO-RT<br>(CONSOLIDATED CASE) |
| ELIZABETH A. KANE, Bankruptcy Trustee;<br><br>Plaintiff,<br><br>v.<br><br>PACAP AVIATION FINANCE, LLC; et al.,<br><br>Defendants. | |

**THE ELLISON DEFENDANTS' BRIEF REGARDING
THE "ACTIVELY SEEKING A BUYER" DEFENSE
<u>UNDER THE DISLOCATED WORKERS ACT</u>**

1

sf-5652937

Island Air was actively seeking a buyer right up until the moment it shut down. Its management team was engaged in extensive negotiations with United Airlines, All Nippon Airways, Elix, and others for various forms of financing, including the potential sale of more than 50 percent of the company. (*E.g.*, Tr.6 155:7-159:25; Tr.8 21:10-22:14, 28:4-35:8, 109:2-23; Tr.10 23:13-24:10, 27:3-6, 97:4-9, 106:7-107:24; Tr.4 205:18-206:19.)

## I. THE "ACTIVELY SEEKING A BUYER" DEFENSE

The Dislocated Workers Act creates an "actively seeking a buyer" affirmative defense, which excuses compliance with the notice requirement otherwise imposed by the Act. H.R.S. Section 394B-9(c) states:

> An employer of a covered establishment that is actively seeking a buyer for a sale, transfer, or merger shall not be required to provide the notice required under subsection (a) until the employer has entered into a binding agreement for the sale, transfer, or merger of the covered establishment that results in a divestiture.

Under this provision, an employer "that is actively seeking a buyer" is not required to provide notice "until" a specified event occurs. If the specified event has not occurred, then no notice is required. That's what the word "until" means. The specified event is when "the employer has entered into a binding agreement . . . that results in a divestiture." Thus, notice is not required unless and until either (i) the employer enters into a "binding agreement," or (ii) the employer ceases to be "actively seeking a buyer." *Id*.

## II.   THE BANKRUPTCY COURT'S ERRONEOUS RULING

The Bankruptcy Court entered summary judgment in favor of the Unions on this affirmative defense, ruling that it is only available if the employer successfully completes a "divestiture."  (Declaration of Christopher Muzzi Ex. A at 14.)  The court cited no case, no statute, and no legal authority for its position.  It offered no analysis of the statute's text.  Its ruling contradicts the plain reading of the statute.

The Bankruptcy Court initially sided with defendants.  At oral argument, Judge Faris stated:

> The second argument the Unions make is that there has to actually be a divestiture for the defense to apply.  I don't agree with that, but I — I sort of agree with that point, but a little bit differently.  I mean, it seems to me that the employer is excused from giving notice as long as it is actively seeking such a transaction — a qualified transaction, but as soon as it stops actively seeking a transaction like that, the excuse goes away.  The notice has to be given . . . .  So I'm inclined to say that the Defense stopped applying at some point, not later than the date that the company decided to shut down, but leave all other issues for the jury as questions of fact.

(*Id*. Ex. B at 9:11-10:3.)

The Bankruptcy Court also acknowledged that at least some evidence showed Island Air was actively seeking a buyer at the time notice allegedly should have been given:

> I think there's a genuine issue of material fact . . . .  There is at least some evidence that the company was talking to United Airlines and Japan Airlines, and the topic of an equity investment came up in those conversations.  So I think there's an issue of fact about whether the scope of the effort was within the Defense.

2

(*Id.* at 9:3-10.)

Then, in its written decision, the Bankruptcy Court reversed course and granted summary judgment in the Unions' favor. The Bankruptcy Court concluded: "It follow[s] that, if the company never makes such an agreement and abandons its efforts, it must give the required notice. Further, it is undisputed that there was never a 'divestiture.' Therefore, the exception does not apply." (Ex. A at 14.) The court did not explain its change in view.

### III.   THE UNIONS' ERRONEOUS ARGUMENT

The Unions argued, to the Bankruptcy Court, that the defense should only be available if the employer successfully has completed a divestiture. According to the Unions, the phrase "that results in a divestiture" would otherwise have no meaning. But that plainly is not the case. The phrase "that results in a divestiture" is simply part of a longer dependent clause describing the event that triggers the notice requirement: "until the employer has entered into a binding agreement for the sale, transfer, or merger of the covered establishment that results in a divestiture." H.R.S. § 394B-9(c). When an employer is "actively seeking a buyer," it need not give any notice "until" it has "entered into a binding agreement" that results in a "divestiture." In other words, the phrase "that results in a divestiture" does not set a requirement for success. It simply describes the type of agreement that would trigger a notice.

That is clear from the statute. The term "divestiture" is defined as "the transfer

3

sf-5652937

of any covered establishment from one employer to another . . . that causes the covered establishment's employees to become dislocated workers." H.R.S. § 394B-2. The statute's notice requirement is triggered by a "closing, divestiture, partial closing, or relocation." H.R.S. § 394B-9(a). Thus, notice would only be required if a binding agreement results in a "divestiture," that is, a transaction that causes employees to become "dislocated workers." A binding transaction about something else — such as debt financing or an equity investment that did not produce any "dislocated workers" — would not be included within the affirmative defense for the obvious reason that it would not be subject to the notice requirement in the first place.

This reading of the statute also accords with common practice and common sense. Active efforts to seek a buyer are usually kept confidential for good reasons. A premature disclosure of negotiations could produce dislocations and confusion among employees and customers. And a notice of an impending shutdown would likely end efforts to complete any transaction with a buyer.

The Unions' interpretation, by contrast, would put the employer in an impossible situation. The employer would either have to give notice of an impending shutdown, which would likely disrupt negotiations with any buyer, or choose not to give notice, knowing it would be liable under the Dislocated Workers Act if its negotiations with the potential buyer do not produce a binding agreement.

4

Hawaii's legislature could not have intended such a result.[1]

## IV. THIS COURT MAY OVERTURN THE BANKRUPTCY COURT'S ERRONEOUS RULING

This Court is not bound by the Bankruptcy Court's prior ruling. Under Rule 54(b), an interlocutory order may always be revised by the Court any time prior to entry of final judgment:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. Proc. 54(b). *See, e.g.*, *Security Farms v. International Bhd. of Teamsters*, 124 F.3d 999, 1009 (9th Cir. 1997) ("bankruptcy court's determinations on non-core matters are subject to *de novo* review by the district court").

## CONCLUSION

This Court should instruct the jury on the Dislocated Workers' Act "actively seeking a buyer" affirmative defense.

Dated: Honolulu, Hawaii, October 15, 2023

*/s/ Christopher J. Muzzi*
CHRISTOPHER J. MUZZI
DARRYL P. RAINS
Attorneys for the Ellison Defendants

---

[1] The federal WARN Act provides a similar affirmative defense to companies "actively seeking capital or business which, if obtained, would have enabled the employer to avoid or postpone the shutdown." 29 U.S.C. § 2102(b)(1). Notably, the WARN Act does not include any requirement that a "divestiture" be completed.

5

sf-5652937